UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JAMES KRUSWICKI,

    Plaintiff,

v.                                                        Case No. 08-C-632

ELECTRICAL CONSTRUCTION
INDUSTRY PENSION PLAN,

    Defendant.

**DECISION AND ORDER ON DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

**BACKGROUND**

On July 23, 2008, the plaintiff, James Kruswicki ("Kruswicki"), commenced this action by filing a complaint naming the Electrical Construction Industry Pension Plan ("the Plan") as the defendant. The Plan is a pension plan that provides retirement benefits for employees, such as Mr. Kruswicki, who are enrolled in it. Mr. Kruswicki was diagnosed with Myelodysplastic Syndrome in February 2005 and was out of work from that date until October 2006. Shortly after his diagnosis, Mr. Kruswicki was told by someone who answered the Plan's phone number that he only qualified for a six-month illness benefit. When Mr. Kruswicki discovered, in February 2008, that he was eligible for disability pension benefits, he applied for retroactive payments of such benefits. The Plan denied Mr. Kruswicki's application and his subsequent appeal. Mr. Kruswicki now claims that the Plan improperly refused to pay him disability pension benefits for the time he was on medical leave from February 1, 2005 to September 30, 2006, in contravention of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132 *et seq*. The defendant has filed a motion for summary judgment arguing that the Plan's denial of Mr. Kruswicki's application for disability pension benefits

was not an arbitrary or capricious decision. The defendant's motion is now fully briefed and is ready for resolution.

## FINDINGS OF FACT

The Plan, is a multiemployer, defined benefit pension plan. (Defendant's Proposed Findings of Fact ("DFOF") ¶ 4.) The Plan was established in 1965 and performs administrative functions at its offices located in Milwaukee, Wisconsin. (DFOF ¶ 3.) The Plan has a fiduciary duty to its participants. (Plaintiff's Proposed Findings of Fact ("PFOF") ¶ 20.) The Plan has a written plan document ("the Plan Document") that describes the different types of pension benefits provided by the Plan, the eligibility for such benefits and other plan provisions. (DFOF ¶ 19.) The Plan also issues a Summary Plan Description ("SPD") to its participants. (DFOF ¶ 20.) The SPD that was available to Mr. Kruswicki in 2005 and 2006 was the 2001 SPD. (DFOF ¶ 22.) The Plan Document and SPD (together with a Trust Agreement) are the operative, controlling documents for the Plan. (DFOF ¶ 21.)

Both the Plan Document and the 2001 SPD stated the following with respect to the availability of disability pension benefits:

> 16. **What Type of Pensions are Provided by the Pension Plan?**
>
> . . .
>
> (c) A Disability Pension for an Employee if:
>
> > (i) he either:
> >
> > > [a] has at least 10 years of Benefit Credit and his termination of employment was after May 1, 1987; or
> > >
> > > [b] has at least 5 years of Benefit Credit and he sustains an injury on or after June 1, 1980 while on a job for a participating Employer which caused total and permanent disability within 90 Days after the date of injury; and

> (ii) his employment with a participating Employer terminates as a result of total and permanent disability; and
>
> (iii) he has filed an application for a pension.

(DFOF ¶ 22.) The 2001 SPD stated that "[t]he types of benefits provided and the Plan's requirements with respect to eligibility, as well as circumstances that result in disqualification, ineligibility, or denial or loss of any benefits are fully described in this booklet." (PFOF ¶ 22.) The 2001 SPD further stated that "[y]our Disability Pension starts on the first day of the month which follows the later of (a) six months from the day on which you become disabled or (b) the date you file your application." (PFOF ¶ 24.) The 2001 SPD concluded with the following:

**IMPORTANT TO REMEMBER**

. . .

> Nothing in this booklet is meant to interpret or change in any way the provisions expressed in the Plan. Only the full Board of Trustees is authorized to interpret the Pension Plan described in this booklet. No employer or union nor any representative of any employer or union, in such capacity, is authorized to interpret this Plan nor can any such person act as an agent of the Trustees.

. . .

> An Employee's right to benefits and the amount of his benefits, if any, are determined only by the terms of the Plan document that was effective on the Employee's last day of work for which a contribution was made by the Employee.

(DFOF ¶ 23.)

The Plan sent out the 2001 SPD to all of the Plan participants when it was issued. (DFOF ¶ 24.) Additionally, upon a participant's request, the Plan sends out summary plan descriptions to such participant. (*Id.*)

Kruswicki began participating in the plan in 1979 as part of his employment as an electrical construction worker. (DFOF ¶ 5.) After Mr. Kruswicki accumulated ten years of enrollment in the Plan, he became entitled to receive disability pension benefits. (*Id.*)

In January 2005, Mr. Kruswicki became ill and was forced to stop working. (DFOF ¶ 6.) In February 2005, Mr. Kruswicki was diagnosed with Myelodysplastic Syndrome. *Id.* At the time, neither Mr. Kruswicki nor his doctors were able to determine how long he would be unable to work. (DFOF ¶ 7.) As a result, no doctors were able to predict at the time of Mr. Kruswicki's initial diagnosis if he would or would not be out of work permanently. (DFOF ¶ 17.) In May of 2005, the plaintiff was diagnosed with Acute Myelogenous Leukemia. (DFOF ¶ 14.)

On February 4, 2005, Mr. Kruswicki called the only number he had for the office that administers the Plan. (PFOF ¶¶ 2-3.) The office Mr. Kruswicki called also administered the Electrical Construction Industry Health and Welfare Plan, the Electrical Construction Industry Annuity Plan and the Electrical Construction Industry Vacation and Holiday Plan. (DFOF ¶ 8.) Mr. Kruswicki was not aware when he called the office for the Plan that there were separate people to speak with about the different benefits available to Plan participants. (PFOF ¶ 4.)

Ms. Nancy O'Neil ("Ms. O'Neil") spoke with Mr. Kruswicki when he called the office for the Plan on February 4, 2005. (PFOF ¶ 5.) Ms. O'Neil was not employed by the Plan at the time Mr. Kruswicki called the office for the Plan. (DFOF ¶ 13.) During this conversation, Mr. Kruswicki informed Ms. O'Neil of his illness and stated that he would be out of work for an extended period of time. (PFOF ¶ 6.) Twice during his conversation with Ms. O'Neil, Mr. Kruswicki asked whether he qualified for any benefits besides the "Accident and Sickness Benefit." (PFOF ¶ 7.) Ms. O'Neil told Mr. Kruswicki that he qualified for no other benefits, but he could apply for Social Security upon the expiration of the "Accident and Sickness Benefit." (PFOF ¶ 8.) At the time she spoke with Mr.

Kruswicki, Ms. O'Neil was aware that disability pension benefits existed. (PFOF ¶ 11.) Indeed, Ms. O'Neil worked a few feet away from the employee responsible for overseeing the administration of disability pension benefits at the time she spoke with Mr. Kruswicki. (PFOF ¶ 9.)

Following her conversation with Mr. Kruswicki in February 2005, Ms. O'Neil handled Mr. Kruswicki's "Accident and Sickness Benefits" claim. (PFOF ¶ 13.) However, Ms. O'Neil never informed Mr. Kruswicki or her supervisors that Mr. Kruswicki was eligible for disability pension benefits. (PFOF ¶ 15.) No one from the Plan informed Mr. Kruswicki that he had a right to recover disability pension benefits pursuant to the Plan. (PFOF ¶ 16.) That said, Mr. Kruswicki never spoke with a claim handler for the Plan. (DFOF ¶ 15.) In October 2006, Mr. Kruswicki returned to work. (DFOF ¶ 26.)

Mr. Kruswicki stated that he may have received the 2001 SPD, but he typically files such documents away without reading them. (DFOF ¶ 25.) As a result, Mr. Kruswicki did not look at his 2001 SPD prior to calling the Plan office in February 2005. (*Id.*)

Ultimately, Mr. Kruswicki did not pursue a claim for disability pension benefits under the Plan until 2008. (PFOF ¶ 19.) Mr. Kruswicki was spurred to apply for disability pension benefits after reading the 2007 SPD information regarding the availability of disability pension benefits. (DFOF ¶ 29.) Mr. Kruswicki stated that he did not pursue a claim for disability pension benefits prior to 2008 because he relied on Ms. O'Neil's representations to him that he did not qualify for any such benefits. (PFOF ¶ 18.)

Mr. Kruswicki filed his claim for retroactive disability pension benefits on February 20, 2008, for the period of February 2005 to October 2006. (DFOF ¶ 30.) The Plan Administrative Manager denied Mr. Kruswicki's claim. In explaining the denial of Mr. Kruswicki's claim, the Plan

Administrative Manager wrote in a letter to Mr. Kruswicki that his decision was based on section 5.5(a) of the Plan document. (DFOF ¶ 33.) Section 5.5(a) of the Plan Document provides:

> A Participant who fails to file an application for benefits shall be deemed lost and such Participant's benefits shall be forfeited. . . . A Participant who files his application within six months of . . . the earliest date as of which he would have been entitled to begin receiving Disability Pension payments, shall be entitled to a retroactive payment to the earliest date as of which he would have been entitled to begin receiving . . . a Disability Pension payment. In all other cases, no retroactive payment shall be made.

(DFOF ¶ 34.) The Plan Administrative Manager continued by stating that Mr. Kruswicki's claim was denied because the application was filed on February 2008, more than six months after the earliest date as of which Mr. Kruswicki alleged that he would have been entitled to begin receiving disability pension benefits. (DFOF ¶ 35.)

On April 24, 2008, the Plan Trustees denied Mr. Kruswicki's appeal of the Plan Administrative Manager's decision. (DFOF ¶ 31.) In addressing the power of the Plan Trustees on appeal, the Plan Document states the following:

> 11.14 Determination by Trustees Binding. The Trustees or, where Trustee responsibility has been delegated to others, such delegates shall have complete authority to determine the standard of proof required in any case and to apply and interpret this Plan. The decisions of the Trustees or their delegates shall be final and binding.
>
> All questions or controversies, of whatsoever character, arising in any manner or between any parties or persons in connection with this Plan or its operation, whether as to any writing, decision, instrument or account in connection with the operation of the Plan or otherwise, shall be submitted to the Trustees or, where the Trustee responsibility has been delegated to others, to such delegates for decision. The decision of the Trustees or their delegates shall be binding upon all persons dealing with the Plan or claiming any benefit hereunder, except to the extent that such decision may be determined to be arbitrary or capricious by a court having jurisdiction over such matter.

(DFOF ¶ 32.)

6

## SUMMARY JUDGMENT STANDARD

A district court must grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) advisory committee's note to 1963 amendment). "Summary judgment is not appropriate 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A party opposing a properly supported summary judgment motion "may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *see also Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001). To state it differently, "[a] party will be successful in opposing summary judgment only when they present definite, competent evidence to rebut the motion." *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000) (quoting *Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997)).

To determine whether a genuine issue of material fact exists, the court must review the record, construing all facts in the light most favorable to the nonmoving party and drawing all reasonable

inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003) (citing *Anderson*, 477 U.S. at 255). "'In the light most favorable' simply means that summary judgment is not appropriate if the court must make 'a choice of inferences.'" *Draghi v. County of Cook*, 184 F.3d 689, 691 (7th Cir. 1999) (quoting *Smith*, 129 F.3d at 425). "The evidence must create more than 'some metaphysical doubt as to the material facts.'" *Albiero v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir. 2001) (quoting *Johnson v. Univ. of Wis.-Eau Claire*, 70 F.3d 469, 477 (7th Cir. 1995)). "A mere scintilla of evidence in support of the nonmovant's position is insufficient." *Id.* (citing *Anderson*, 477 U.S. at 252).

Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

**ANALYSIS**

Mr. Kruswicki's complaint advances several grounds for relief. Generally, his complaint alleges that the Plan improperly denied Mr. Kruswicki's claim for retroactive disability pension benefits in violation of ERISA. The Plan seeks summary judgment on each of Mr. Kruswicki's claims. The court will address each claim in turn.

**Review of Plan Determination**

The parties agree that this court must review the Plan's determination to deny Mr. Kruswicki's claim for benefits under an "arbitrary and capricious" standard. *See Hertzberger v. Standard Ins. Co.*, 205 F.3d 327, 332 (7th Cir. 2000). The Seventh Circuit has stated that this standard "is a sliding scale that requires that judicial review be more penetrating the greater is the suspicion of partiality, less penetrating the smaller that suspicion is." *Manny v. Cent. States, Southeast & Southwest Areas*

*Pension & Health & Welfare Funds*, 388 F.3d 241, 243 (7th Cir. 2004) (internal quotations omitted). In this case, the court's task is to review a plan decisionmaker's interpretation of a plan to determine whether the decisionmaker's interpretation was "completely unreasonable." *Id.* Thus, as long as the decisionmaker's interpretation is not contrary to the plain language of the plan, it should be affirmed. *See Hess v. Reg-Ellen Machine Tool Corp.*, 502 F.3d 725, 727 (7th Cir. 2007).

*Estoppel Claim*

Mr. Kruswicki initially attempts to estop the Plan from relying on its interpretation of the terms of the Plan Document because of a conflict between the Plan Document and the Plan SPD.[1] Specifically, Kruswicki contends that the Plan failed to meet the disclosure requirements of 29 U.S.C. §§ 1022 and 1024. Under both 29 U.S.C. §§ 1022 and 1024, plan administrators are required to furnish employees with an SPD. The SPD must be "written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022(a)(1). In particular, an SPD must "contain . . . the plan's requirements respecting eligibility for participation and benefits" and "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits." 29 U.S.C. § 1022(b).

Based on the above, Mr. Kruswicki argues that, because the Plan's central governing documents – the Plan Document and the Plan SPD – have conflicting terms, the Plan violated 29 U.S.C. §§ 1022 and 1024. In support of this contention, Mr. Kruswicki asserts that the 2001 SPD, while claiming to include an exhaustive recitation of eligibility requirements, did not state that applicants for disability pension benefits were required to apply for such benefits within a certain

---

[1] Although Kruswicki's complaint asserts separate estoppel claims under 29 U.S.C. § 1132, his briefs appear to treat such claims as one and the same. Additionally, the parties have not pointed to any case law indicating that such claims are distinct. Accordingly, the court will consider the claims under the same rubric.

period of time. As a result, Mr. Kruswicki argues that the 2001 SPD was in direct conflict with the Plan Document because the Plan Document did include a time requirement for applicants applying for disability pension benefits.

The Seventh Circuit has stated that "[w]hen . . . the plan and the summary plan description conflict, the former governs, being more complete – the original as it were, which the summary plan description excerpts and translates into language that may be imprecise because it is designed to be intelligible to lay persons – unless the plan participant or beneficiary has reasonably relied on the summary plan description to his detriment." *Health Cost Controls, Inc. v. Washington*, 187 F.3d 703, 711 (7th Cir. 1999). "If an SPD does not satisfy ERISA's disclosure requirements, a court may estop a plan administrator from denying coverage for terms not included in the SPD but found in the underlying plan." *Mers v. Marriott Int'l Group Accidental Death & Dismemberment Plan*, 144 F.3d 1014, 1023 (7th Cir. 1998). This is so "only if there is a contradiction between the summary plan document and the policy." *Id.*

After reviewing the record, I am satisfied that, even if this court were to agree with Mr. Kruswicki that a conflict existed between the terms of the 2001 SPD and the Plan Document, the record does not contain any evidence that Mr. Kruswicki relied upon the terms of the 2001 SPD. To reiterate, the Seventh Circuit has made it clear that Mr. Kruswicki must have relied upon the SPD in question before estopping the Plan from relying on the terms of the Plan Document. Yet, Mr. Kruswicki stated that he never looked at the 2001 SPD. Nor has Mr. Kruswicki argued that he otherwise relied on the terms of the 2001 SPD to his detriment. Accordingly, I am unable to find that any conflict between the 2001 SPD and the Plan Document estops the Plan from relying on the language in the Plan Document.

Admittedly, Mr. Kruswicki's conversation with Ms. O'Neil adds an additional wrinkle to this case. There is certainly some appeal to the argument that a plaintiff should be excused from demonstrating reliance upon an SPD's benefit description when he was orally informed that he did not qualify for any such benefits. *See Bowerman v. Wal-Mart Stores, Inc.*, 226 F.3d 574, 587-90 (7th Cir. 2000) (finding that oral misrepresentations may become grounds for ERISA estoppel only where plan documents are ambiguous or misleading). But, even here, the plaintiff's argument falls short as the existence of disability pension benefits, which was not disclosed by Ms. O'Neil, was clearly stated in both the Plan Document and the 2001 SPD.

*Reasonableness of Plan Interpretation*

Given the foregoing, this court must next determine whether the Plan's interpretation of the language in the Plan Document is "completely unreasonable." The Plan based its rejection of Mr. Kruswicki's claim for retroactive disability pension benefits on section 5.5(a) of the Plan Document. Section 5.5(a) of the Plan Document provides:

> A Participant who fails to file an application for benefits shall be deemed lost and such Participant's benefits shall be forfeited. . . . A Participant who files his application within six months of . . . the earliest date as of which he would have been entitled to begin receiving Disability Pension payments, shall be entitled to a retroactive payment to the earliest date as of which he would have been entitled to begin receiving . . . a Disability Pension payment. In all other cases, no retroactive payment shall be made.

(DFOF ¶ 34.) The Plan Administrative Manager and Trustees determined that, based on section 5.5(a) of the Plan Document, Mr. Kruswicki's application for retroactive disability pension benefits was untimely.

Mr. Kruswicki – by his own assertion – became disabled some time in January or February of 2005. He was required, under section 5.5(a), to file his application for disability pension benefits within the time period described above. The parties agree that Mr. Kruswicki's application for

11

retroactive disability pension benefits, which was filed in August 2008, was far removed from this limitation. Based on the above, I cannot say that the Plan's interpretation of section 5.5(a) of the Plan Document was either unreasonable or finds no rational support in the record.

Nor do I find – as the plaintiff contends – that the fact that the Plan Trustees both make benefit eligibility determinations and pay out benefits affects the reasonableness of the Trustees' actions. In *Metropolitan Life Insurance Co. v. Glenn*, the Court held that when an entity that administers an ERISA plan, such as an employer or an insurance company, both determines whether an employee is eligible for benefits and pays benefits out of its own pocket, a conflict of interest is created. 128 S. Ct. 2343, 171 L. Ed. 2d 299 (2008). The Court went on to state that "a reviewing court should consider that conflict as a factor in determining whether the plan administrator has abused its discretion in denying benefits; and that the significance of the factor will depend upon the circumstances of the case." *Id.* That said, the Seventh Circuit has stated that only when "the case is borderline . . . [an] inherent conflict of interest . . . can push it over the edge – towards a finding of capriciousness." *Jenkins v. Price Waterhosue Long Term Disability Plan*, 564 F.3d 856,861-62 (7th Cir. May 4, 2009). And so, "[q]uestions of judgment are left to the plan administrator, and it is not [the court's] function to decide whether [it] would reach the same conclusion as the administrator." *Davis v. Unum Life Ins. Co. of America*, 444 F.3d 569, 576 (7th Cir. 2006) (internal quotations and citations omitted).

After considering the plaintiff's argument, I am satisfied that the *Glenn* decision does not affect my finding that the Plan Trustees' rejection of Mr. Kruswicki's application finds rational support in the record. To reiterate, this court is limited to determining whether the Plan Trustees had a rational basis for rejecting Mr. Kruswicki's application for benefits. Simply stated, the Plan Trustees' interpretation of section 5.5(a) is straightforward and reasonable. And so, precisely because the Plan

Trustees' interpretation is so straightforward, this court has no basis for invoking the *Glenn* rule for borderline interpretations.

The plaintiff further contends that courts construing the reasonableness of a plan's actions should consider a broad range of factors in assessing whether a plan acted reasonably. Or, stated differently, the plaintiff argues that the court should consider the reasonableness of the circumstances in a given case instead of ascertaining whether a plan had a rational support for its actions. The plaintiff argues that this court should consider whether the Plan Trustees' interpretation of the Plan Document was reasonable in light of "the administrator's misleading statements to Mr. Kruswicki, his detrimental reliance on that statement, and the Plan's violation of ERISA disclosure requirements, in combination with its structural conflict of interest." (Pl.'s Br. 6.)

Here again, I remain of the opinion that the Plan Trustees' decision finds rational support in the record. Indeed, it is difficult to separate the plaintiff's argument on this point from the estoppel argument considered and rejected above. I am satisfied that the considerations identified by the plaintiff do not affect my conclusion that the Plan Trustees had a rational basis – the language in section 5.5(a) – for rejecting as untimely Mr. Kruswicki's application for benefits.

**Fiduciary Duty Claim**

Mr. Kruswicki is also pursuing a breach of fiduciary duty claim under 29 U.S.C. § 1132(a)(3). In order to prevail on this claim, Mr. Kruswicki must prove that: (1) the Plan had a fiduciary obligation to Mr. Kruswicki; (2) the Plan breached that fiduciary duty; and (3) that breach caused harm to Mr. Kruswicki. *See Kannapien v. Quaker Oats*, *Co.*, 507 F.3d 629, 639 (7th Cir. 2007).

The first issue requiring this court's attention is whether Mr. Kruswikci's fiduciary duty claim impermissibly seeks legal damages under 29 U.S.C. § 1132(a)(3). Title 29 U.S.C. § 1132(a) provides, in relevant part, that a participant in a plan covered under ERISA may bring a suit: "(A) to enjoin any

13

act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief . . . ." 29 U.S.C. § 1132(a)(3). The Supreme Court has stated that "[t]he words of subsection (3) – 'appropriate equitable relief' to 'redress' any 'act or practice which violates any provision of this [subchapter]' are broad enough to cover individual relief for breach of a fiduciary obligation." *Varity Corp. v. Howe*, 516 U.S. 489, 510, 116 S. Ct. 1065, 134 L. Ed. 2d 130 (1996). That said, "suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for money damages. . . . And money damages are, of course, the classic form of legal relief" and are not recoverable under § 1132(a)(3). *See Great-West Life & Annuity Insurance Company v. Knudson*, 534 U.S. 204, 210, 122 S. Ct. 708, 151 L. Ed. 2d 635 (2002).

    Mr. Kruswicki states in his brief in opposition to the Plan's motion for summary judgment that "[his] request for relief is not one for restitution . . . ." (Pl.'s Br. 13.) Mr. Kruswicki denominates his claim as one seeking injunctive relief that would "place each party in the position it was in on February 1, 2005 with respect to the Plan, claims for disability pension benefits, and benefits eligibility for the Plaintiff." (*Id.*) Mr. Kruswicki continues by stating that, "[he] does not request more than that to which he is entitled." (*Id.*)

    In my opinion, Mr. Kruswicki's breach of fiduciary duty claim seeks relief that is not available under § 1132(a)(3). As the Court stated in *Great-West*, "an injunction to compel the payment of money past due under a contract, or specific performance of a past due monetary obligation, was not typically available in equity." *Id.* at 210-11. Indeed, "any claim for legal relief can, with lawyerly inventiveness, be phrased in terms of an injunction." 534 U.S. at 211, fn. 1. So it is with Mr. Kruswicki's claim for an injunction, which is really a claim for compensatory damages. Distilled to its essence, the injunction sought by Mr. Kruswicki would require the defendant to reconsider Mr.

14

Kruswicki's claim for benefits and then prohibit the defendant from denying his claim as being untimely filed. Through an injunction, Mr. Kruswicki is attempting to obtain the money he claims the Plan owes him. Simply put, the Court's decision in *Great-West* forecloses this avenue of relief to Mr. Kruswicki.

I am aware that Mr. Kruswicki has battled difficult circumstances and I take no particular pleasure in issuing this decision and order. But, I am bound to apply the law as I find it. In the end, application of the law to the facts of this case leads to the conclusion that the defendant's motion must be granted.

**NOW THEREFORE IT IS ORDERED** that the defendant's motion for summary judgment be and hereby is **GRANTED**;

**IT IS FURTHER ORDERED** that this action be and hereby is **DISMISSED**;

**IT IS FURTHER ORDERED** that the clerk of court enter judgment accordingly.

**SO ORDERED** this 11th day of January 2010 at Milwaukee, Wisconsin.

                        **BY THE COURT:**

                        s/ William E. Callahan, Jr.
                        WILLIAM E. CALLAHAN, JR.
                        United States Magistrate Judge